599 A.2d 856

**Robert Lester TRACEY**

v.

**Ruth Marie TRACEY.**

**No. 334, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Dec. 30, 1991.

Certiorari Granted Feb. 25, 1992.

702

J. Dennis Murphy, Jr. (Reed & Murphy, Chartered, on the brief), Annapolis, for appellant.

John A. Blondell, Glen Burnie, for appellee.

Argued before ALPERT, ROSALYN B. BELL and DAVIS, JJ.

DAVIS, Judge.

The appellant, Robert L. Tracey (Mr. Tracey), appeals from a Judgment of Divorce by the Circuit Court of Anne Arundel County (Wolff, J.). As part of the divorce, the circuit court awarded appellee, Ruth M. Tracey (Mrs. Tracey), indefinite alimony in the amount of $300.00 per month. It is from that decision that Mr. Tracey appeals.

## FACTS

Robert and Ruth Tracey were married on December 28, 1963, in Joppa, Maryland, and two children were born of the marriage.[1] On April 20, 1989, after a series of short separations and reconciliations, Mrs. Tracey left the marital home and established her own residence. On June 28, 1989, Mr. Tracey filed a bill of complaint for a limited divorce on the grounds of desertion, and Mrs. Tracey later filed a countercomplaint for limited divorce on the grounds of constructive desertion. On October 31, 1990, Mr. Tracey filed a two count amended complaint for absolute divorce alleging desertion in one count and voluntary separation in the second count. Mrs. Tracey filed an answer in which she alleged constructive desertion and voluntary separation as grounds for absolute divorce.

In a judgment of absolute divorce dated December 17, 1990, the circuit court granted Mr. Tracey a divorce on the grounds of voluntary separation for one year and dismissed Mrs. Tracey's complaint for a divorce. The court did not

---

**1.** Both sons were adults at the time of trial. One son lived with Mr. Tracey, and the other son resided with Mrs. Tracey.

rule on desertion, the second count of Mr. Tracey's complaint. The court awarded Mrs. Tracey $300 per month in indefinite alimony "because of her needs and the disparity between their [Mr. and Mrs. Tracey's] relative incomes." The record showed that Mrs. Tracey, forty-six at time of trial, earned $15,381.88 in annual gross pay in 1989 from her full-time job as a payroll technician with the federal government. The court awarded her the alimony upon condition that she give up her approximately $400 per month (or $4,800 per year) part-time job with McDonald's Corp., where she worked approximately twenty to twenty-five hours per week. If Mrs. Tracey resumes that or any other part-time job, the court said Mr. Tracey could petition the court for modification of alimony based on change of circumstances. In 1989, Mr. Tracey, forty-eight at time of trial, had annual gross earnings (including overtime) of $57,973.25; and his earnings for 1990 were projected to be $60,292.18.

Prior to the divorce, the parties agreed to an equal division of their marital assets, which included their marital home; a savings plan with Mr. Tracey's employer worth at least $54,000; a mutual fund valued at $5,854; life insurance policies with an aggregate value of $11,170; and $10,225 from the couple's automobiles.

On appeal, Mr. Tracey raises five issues for the Court's review:

I. Whether the trial court erred by refusing to consider appellee's income from her part-time job in deciding whether she was entitled to an award of indefinite alimony.

II. Whether the trial court erred by not considering the income that appellee would receive from the proceeds of the sale of the marital home.

III. Whether the trial court has the statutory discretion to make an award of indefinite alimony if the spouse seeking the award is self-supporting at the time of divorce.

IV.  Whether the trial court erred in making an award of alimony that was conditioned on appellee quitting her part-time job and refraining from any employment in addition to her full-time job with the federal government.

V.  Whether the trial court erred in finding an unconscionable disparity in the standards of living of the parties.

## DISCUSSION

### I AND IV

The divorce judgment of the circuit court ordered Mr. Tracey to pay indefinite alimony of $300 per month to Mrs. Tracey until the death of either party, her remarriage, further order of the court, or until Mrs. Tracey engages in part-time employment in addition to her full-time job with the federal government.  The stipulation regarding part-time employment stemmed from the fact that Mrs. Tracey, in addition to her full-time job, also worked in a part-time position upon separating from her husband.  The court, in deciding that she could not receive alimony if she continued the part-time job, said:

> Neither of them during their lifetime had two jobs of employment.  They each had one job.  She had put down it was only temporary and that she did that to survive because she wasn't getting paid any support....  She is not required to work two jobs....  [I]f she continues to work [the part-time job], she is going to have to have it [the alimony] modified.

Maryland law empowers a trial court to award rehabilitative as well as indefinite alimony to an economically dependent spouse upon divorce.  In making this determination, the court must follow the dictates of § 11–106 of the Family Law section of the Maryland Code.[2]  Mr. Tracey contends that the trial court committed reversible error when it

---

2.  Section 11–106, applicable when this case was decided, provides:

refused to consider Mrs. Tracey's income from her part-time job in deciding whether to award indefinite alimony and when it awarded alimony upon condition that Mrs. Tracey discontinue her part-time employment. We disagree.

---

(a) *Court to make determination.*—(1) The court shall determine the amount of and the period for an award of alimony.

(2) The court may award alimony for a period beginning from the filing of the pleading that requests alimony.

(3) At the conclusion of the period of the award of alimony, no further alimony shall accrue.

(b) *Required considerations.*—In making the determination, the court shall consider all the factors necessary for a fair and equitable award, including:

(1) the ability of the party seeking alimony to be wholly or partly self-supporting;

(2) the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment;

(3) the standard of living that the parties established during their marriage;

(4) the duration of the marriage;

(5) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

(6) the circumstances that contributed to the estrangement of the parties;

(7) the age of each party;

(8) the physical and mental condition of each party;

(9) the ability of the party from whom alimony is sought to meet that party's needs while meeting the needs of the party seeking alimony;

(10) any agreement between the parties; and

(11) the financial needs and financial resources of each party, including:

(i) all income and assets, including property that does not produce income;

(ii) any award made under §§ 8-205 and 8-208 of this article;

(iii) the nature and amount of the financial obligations of each party; and

(iv) the right of each party to receive retirement benefits.

(c) *Award for indefinite period.*—The court may award alimony for an indefinite period, if the court finds that:

(1) due to age, illness, infirmity, or disability, the party seeking alimony cannot reasonably be expected to make substantial progress toward becoming self-supporting; or

(2) even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate.

Md.Fam.Law Code Ann. § 11-106 (1984).

In reviewing alimony awards, "[w]e are aware that the trial court has broad discretion in setting an award of alimony ... and that an alimony award will not be disturbed unless the court's discretion was arbitrary or 'his judgment was clearly wrong.'" *Benkin v. Benkin,* 71 Md.App. 191, 205, 524 A.2d 789 (1987), quoting *Brodak v. Brodak,* 294 Md. 10, 28–29, 447 A.2d 847 (1982) (citations omitted). We agree with the trial court that an economically dependent party should not be forced to work two jobs in order to make ends meet, while the economically independent party is not required to work a second job merely because he earns more money. Evidence showed that Mrs. Tracey worked approximately twenty to twenty-five hours per week at her part-time job to earn a total of $21,649 from both jobs, while Mr. Tracey, who occasionally worked overtime, had projected earnings of $60,292.18 in 1990. Under Maryland's alimony statutes, which underwent major revision in 1980, a court cannot guarantee an economically dependent spouse after the divorce the same standard of living maintained before the divorce. The court, however, should ensure that equitable results flow from the divorce. We have reviewed the trial court's findings regarding the income and financial needs of both parties,[3] and it is clear that Mrs. Tracey would suffer a deficit each month without either the part-time job or the alimony. We believe that it

---

3.

| Monthly | Appellee | Appellant |
|---|---|---|
| Wages: | $ 942 | $2,962 |
| Contribution from son: | $ 200 | $ 200 |
| 7% interest income from divided marital assets, excluding house: | $ 275 | $ 198 |
| Income: | $1,417 | $3,360 |
| Expenses: | $2,116 | $2,010 |
| Difference: | <$ 699 > | $1,350 |

would be unfair to require Mrs. Tracey, who was married to Mr. Tracey for twenty-seven years, to continue working two jobs in order to make ends meet. We therefore hold that the decision of the trial court not to include Mrs. Tracey's part-time income in its calculations was not clearly erroneous, and that the court correctly awarded alimony upon condition that she not work the extra job. As the trial court indicated, if Mrs. Tracey works another job, it then would open the door for Mr. Tracey to petition for modification of alimony on the grounds of change of circumstances.

## II

■ The appellant contends that the trial court erred by failing to consider the income that Mrs. Tracey will receive from proceeds from the sale of the marital home. We see it differently. Evidence showed that the Traceys had equity in excess of $100,000 in their marital home, and that the parties had agreed to divide the proceeds from its sale equally between them. In deciding not to consider interest from the proceeds of sale as income to Mrs. Tracey, the court said: "I took into consideration that the house is going to be sold and divided. The receipts. That money I have not charged to them because I asked each of them and both of them indicated they intend to buy another house and that's going to be reinvested." The home had not been sold at the time of trial, and a trial court should not be compelled to consider income not yet in hand when calculating a party's income.

Mr. Tracey relies on *Hull v. Hull,* 83 Md.App. 218, 574 A.2d 20, *cert. denied,* 321 Md. 67, 580 A.2d 1077 (1990), as support for his contention that anticipated proceeds from the sale of the couple's home should be included as income to Mrs. Tracey. In *Hull,* the wife was self-supporting, even without including anticipated proceeds from the sale of the couple's island home, which was valued at $1,150,000. *Id.* at 225. Her portfolio, independent of anticipated assets from the sale, was valued at $598,960 and produced an estimated annual income of $45,271. The couple had agreed

to divide the proceeds of the sale of their home equally between them, and each party was expected to receive $550,000. *Hull* is distinguishable from the instant case because Mrs. Hull, in stark contrast to Mrs. Tracey, was self-supporting, even without including the anticipated assets from the sale of the house. Though the Court acknowledged that Mrs. Hull had anticipated assets of $1.1 million, the appropriateness of including or excluding such assets as income to the wife was not examined in *Hull*. In the instant case, Mr. and Mrs. Tracey indicated that, once they disposed of their former residence, each would use the money to purchase his or her own home. There is no guarantee that the Traceys will receive market value for their house, and calculating income based on not-yet-obtained income would be counterproductive. When the home is sold, Mr. Tracey then may petition the court for modification of alimony due to change of circumstances if, in fact, there is such a change of circumstances.

## III AND V

■ The appellant next challenges whether the trial court has statutory discretion to make an award of indefinite alimony if the spouse seeking the award is self-supporting at the time of divorce. We also address appellant's fifth issue, where he contends the court erred in finding an unconscionable disparity in the standards of living of the parties. To address these questions fully, we first must examine the purpose of alimony.

Under the present statute, the principal function of alimony is rehabilitation. Thus, when awarding alimony, the chancellor is required to consider not only those factors relating to the financial situation, age and health of each party, their standards of living, the duration of marriage and the contribution of each party to its well being but also the ability of the party seeking alimony to be wholly or partially self-supporting and the time deemed necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable

employment. It is apparent, therefore, that the concept of alimony as a lifetime pension enabling the financially dependent spouse to maintain an accustomed standard of living has largely been superseded by the concept that the economically dependent spouse should be required to become self-supporting, even though that might result in a reduced standard of living.

*Holston v. Holston,* 58 Md.App. 308, 321, 473 A.2d 459, *cert. denied,* 300 Md. 484, 479 A.2d 372 (1984) (footnote omitted).

The fact remains, however, that sometimes, indefinite support "may be warranted where it would be impractical to expect the economically dependent spouse to become self-supporting through further education or training or where rehabilitative spousal support for a limited period of time would result in gross inequity." *Rock v. Rock,* 86 Md.App. 598, 609, 587 A.2d 1133 (1991). Md.Fam.Law Code Ann. § 11–106(c) states that the court may award indefinite alimony if the court finds that:

(1) due to age, illness, infirmity, or disability, the party seeking alimony cannot reasonably be expected to make substantial progress toward becoming self-supporting; or

(2) even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate.

In the instant case, the trial court found that Mrs. Tracey was not self-supporting[4] because her financial needs exceeded her income. The court said it would serve no purpose for Mrs. Tracey to further her education in the hope of securing a higher paying position. The court said:

---

**4.** Mrs. Tracey married Mr. Tracey in 1963 at the age of 19, and at that time, she was a shoe factory employee. After giving birth to two sons, she worked as a homemaker and sold Avon products. In 1979, she returned to work as a bookkeeper. In 1987, she secured employment with the federal government as a payroll technician where she remains now. Her education consists primarily of a GED.

I don't think that she can get any better job than she has now. She is not able to support herself, the husband is.... The wife has not done well in school. Even going back to pick up a couple of courses, they're not going to open up any doors to her. That she is at a level, probably the best that she's going to obtain. She may get promotions within the government, but I can't see sending her back to just—to take some courses over an indefinite period of time. That would make no sense.

Mrs. Tracey, who makes a total of $21,649 per year from both her jobs, earns about 36 percent of the salary of her husband; and in all likelihood, she never will achieve parity with him in terms of earnings. It is well settled that the chancellor may award indefinite alimony where the dependent spouse could become self-supporting in time; but where, even so, gross disparities in earnings would continue to exist between the independent spouse and the dependent spouse. In *Rock v. Rock, supra*, a 33–year–old wife never had earned more than $24,000 per year while her husband had earned in excess of $100,000 per year each year from 1985 through 1988. The trial court awarded indefinite alimony because, even after the wife " 'makes maximum progress towards being self-supporting, the respective standards of living between the plaintiff and defendant will be unconscionably disparate.' " *Id.* at 610, 587 A.2d 1133. In *Broseus v. Broseus*, 82 Md.App. 183, 570 A.2d 874 (1990), the trial court awarded indefinite alimony because " 'even after Ms. Broseus will have made as much progress towards becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate.... The disparity of 54 percent is likely to grow larger not smaller.' " *Id.* at 196, 570 A.2d 874. We affirmed the trial court's findings and conclusions. In *Kennedy v. Kennedy*, 55 Md.App. 299, 462 A.2d 1208 (1983), Mrs. Kennedy earned about 33 percent of her husband's income. In all these cases, the courts held that there was an unconscionable disparity in the incomes

of the spouses, even if the potential rehabilitation were to be realized.

Similarly, we find that such was the case with Mr. and Mrs. Tracey. The trial court found that, even after Mrs. Tracey made as much progress as could be reasonably expected, their standards of living would be unconscionably disparate. Moreover, the record clearly reflects that she currently is not self-supporting because her financial need exceeds her income and that her limited education and work skills will hamper her ability to become self-supporting in the future. The trial court in the instant case did not abuse its discretion in awarding indefinite alimony to Mrs. Tracey.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.